**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-24572-CIV-MARTINEZ/AOR

CHANCE DAWKINS,

    Petitioner,

v.

MARK INCH, Secretary, Florida
Department of Corrections,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Chance Dawkins' ("Dawkins" or "Petitioner") Petition Under 28 U.S.C. § 2254 ("Section 2254 Petition") [D.E. 1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 5]. The State of Florida ("State" or "Respondent") has filed: a Response to the Section 2254 Petition (hereafter, "Response") [D.E. 10]; an Appendix [D.E. 11]; a Notice of Filing State Court Transcripts ("Trial Transcripts") [D.E. 12]; and a Notice of Filing State Court Post-Trial Transcripts ("Post-Trial Transcripts") [D.E. 13]. After full consideration of these materials, the undersigned respectfully recommends that Dawkins' Section 2254 Petition be DENIED.[1]

**PROCEDURAL BACKGROUND**

On May 27, 2008, a grand jury sitting in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, charged Petitioner in Case No. F07-26997 with the following offenses, allegedly committed on or about July 18, 2007:

---

[1] The undersigned previously denied Petitioner's request for an evidentiary hearing on his Section 2254 Petition. See Order Denying Motion for Evidentiary Hearing [D.E. 24].

>    Count 1 -    Murder in the First Degree, in violation of Fla. Stat. §§ 782.04(1), 775.087 & 777.011.
>
>    Count 2 -    Attempted Armed Robbery, in violation of Fla. Stat. §§ 812.13(2)(b), 775.087, 777.04 & 777.011

See Indictment [D.E. 11-1 at 38-42]. As to Count 1 of the Indictment, the grand jury charged that Petitioner

> did unlawfully and feloniously kill a human being, to wit: ARKADY AMINOV, from a premeditated design to effect the death of the person killed or any human being **and/or** while engaged in the perpetration of, or in an attempt to perpetrate any Robbery by shooting said ARKADY AMINOV, and during the course of the commission of the offense, said defendant discharged a firearm or destructive device and as a result of the discharge, death or great bodily harm was inflicted upon ARKADY AMINOV . . . .

Id. at 38 (emphasis added). Thus, Petitioner was alleged to have committed first degree murder in Count 1 of the Indictment "in the alternative, as either premediated murder or felony-murder." See Response [D.E. 10 at 31]. At trial, the State agreed that only the felony murder charge in Count 1 should be presented to the jury. See Trial Transcripts [D.E. 12-16 at 72-73] (Assistant State Attorney Mr. Vandergiesen stating: "I'm agreeing that I'm proceeding on felony murder").

On November 24, 2008, the jury returned the following verdicts. As to Count 1, the jury did not find Petitioner guilty of Felony Murder in the First Degree but found him GUILTY of Murder in the Second Degree as a lesser included offense. The jury further found that, during the commission of that crime, Petitioner possessed and discharged a firearm, but did not find that Petitioner discharged a firearm causing great bodily harm and/or death. As to Count 2, the jury found Petitioner GUILTY of Attempted Robbery. The jury further found that, during the commission of that crime, Petitioner possessed and discharged a firearm, but did not find that Petitioner discharged a firearm causing great bodily harm and/or death. See Verdicts [D.E. 11-1 at 43-44].

On December 5, 2008 and January 26, 2009, Petitioner filed successive Motions for a New

Trial (together, "Motions for New Trial") [D.E. 11-1 at 45-47]. Petitioner argued, *inter alia*, that the jury's verdict was contrary to the law and/or contrary to the weight of the evidence [D.E. 11-1 at 45]. At a hearing on November 2, 2010, the trial court denied the Motions for New Trial. See Post-Trial Transcripts [D.E. 13-3 at 35-36].

On November 15, 2010, Petitioner was sentenced to a term of 25 years for the Count 1 lesser included offense of Second Degree Murder with a minimum mandatory term of 20 years, based on the discharge of a firearm, as found by the jury; Petitioner was also sentenced to a concurrent term of 20 years for the Count 2 offense of Attempted Robbery. See Sentence [D.E. 11-1 at 52-55].

On direct appeal to the Third District Court of Appeal, Petitioner raised the following two grounds as a basis for reversal:

I. THE DEFENSE ATTORNEY'S NEGLIGENT FAILURE TO SECURE THE TRIAL TESTIMONY OF A DEFENSE WITNESS, WHO WOULD HAVE IMPEACHED A KEY PROSECUTION WITNESS ON A DISPUTED MATERIAL ISSUE, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL ON THE FACE OF THE RECORD.

II. THE COURT COMMITTED FUNDAMENTAL REVERSIBLE ERROR IN GIVING A FATALLY DEFECTIVE MANSLAUGHTER BY ACT INSTRUCTION.

See Initial Brief of Appellant [D.E. 11-1 at 56-57]. On February 13, 2013, the Third District Court of Appeal issued a per curiam opinion affirming Petitioner's conviction. See Opinion [D.E. 11-1 at 109-10]. The mandate issued on March 1, 2013 [D.E. 11-1 at 111]. During the period from October 1, 2013 through July 21, 2017, additional proceedings occurred in the Third District Court of Appeal and the Florida Supreme Court, which ultimately proved unsuccessful for Petitioner. See Response [D.E. 10 at 4-5].

On September 28, 2017, Petitioner filed a *pro se* Motion for Postconviction Relief pursuant to Fla. R. Civ. P. 3.850 (hereafter, "Rule 3.850 Motion") [D.E. 11-2 at 129-43]. Petitioner

3

presented the following grounds in support of his Rule 3.850 Motion:

1. INEFFECTIVE ASSISTANCE [OF] COUNSEL WHERE COUNSEL FAILED TO FILE A MOTION FOR NEW TRIAL BASED ON THE VERDICT BEING CONTRARY TO THE LAW AND OR WEIGHT OF THE EVIDENCE PREJUDICING THE DEFENDANT BY DENYING DUE PROCESS VIOLATING DEFENDANT['S] 5TH 6TH AND 14TH AMENDMENT UNITED STATES CONSTITUTION.

2. Part (1): INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO INVESTIGATE, TAKE DEPOSITIONS AND CALL TO TESTIFY EXCULPATORY WITNESSES. VIOLATING DEFENDANT['S] 5TH 6TH AND 14TH AMENDMENT UNITED STATES CONSTITUTION.

   Part (2): INEFFECTIVE ASSISTAN[CE OF] COUNSEL WHERE COUNSEL FAILED TO INVESTIGATE [THE] ARRESTING OFFICERS FOR TAKING THE MONEY DEFENDANT HAD TO PAY FOR THE POUND OF MARIJUANA. VIOLATING DEFENDANT['S] 5TH 6TH AND 14TH AMENDMENT UNITED STATES CONSTITUTION.

3. INEFFECTIVE ASSISTAN[CE OF] COUNSEL [FOR] FAILURE TO OBJECT TO JURY INSTRUCTION WHICH CONFUSED AND MISLEAD THE JURY. VIOLATING DEFENDANT['S] 5TH 6TH AND 14TH AMENDMENT UNITED STATES CONSTITUTION.

See Rule 3.850 Motion [D.E. 11-2 at 132-40]. On September 26, 2018, the post-conviction court issued a detailed order denying the Rule 3.850 Motion in its entirety. See Order Denying Defendant's Pro Se Motion for Post Conviction Relief (hereafter, "Rule 3.850 Order") [D.E. 11-3 at 16-27].

Thereafter, Petitioner appealed the Rule 3.850 Order. See Appellant's Initial Brief [D.E. 11-3 at 28-57]. On April 3, 2019, the Third District Court of Appeal issued a per curiam affirmance [D.E. 11-3 at 121]. The mandate issued on April 30, 2019 [D.E. 11-3 at 122]. On May 7, 2019, the Florida Supreme Court dismissed Dawkins' petition for review, based on lack of jurisdiction [D.E. 11-3 at 129].

Dawkins filed his Section 2254 Petition on November 4, 2019, asserting the following grounds:

> GROUND ONE: Ineffective assistance of trial counsel - counsel failed to argue that the jury reached an inconsistent verdict in the motion for new trial.
>
> GROUND TWO: Ineffective assistance of appellate counsel – counsel failed to file supplemental briefing with respect to an important change in law which would have resulted in reversal of the appeal.

See Section 2254 Petition [D.E. 1 at 5-7]. The State acknowledges that the Section 2254 Petition "was timely filed." See Response [D.E. 10 at 13]. Petitioner recognizes that he did not exhaust his state court remedies as to Ground Two, but he seeks to overcome the procedural default of non-exhaustion on the basis that his Rule 3.850 Motion was filed *pro se*. See Petition [D.E. 1 at 7] (citing Martinez v. Ryan, 566 U.S. 1 (2012)).

## APPLICABLE LAW

### 1. *Entitlement to the habeas corpus writ.*

Title 28, United States Code, Section 2254 (hereafter, "Section 2254") provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d)-(e)(1).

"The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted). The AEDPA prevents defendants – and federal courts – from using federal habeas review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015).

Federal habeas "relief may be available if the state habeas court decision is 'contrary to' clearly established United States Supreme Court precedent." Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002). "Alternatively, 'if the state court confronts a set of facts that are materially indistinguishable from a [relevant Supreme Court decision and] arrives at a result different' from that decision, such a result is also contrary to Supreme Court precedent." Id. (alteration in original) (citation omitted). Additionally, "a petition for habeas relief may also be granted if the state court decision involved an 'unreasonable application' of Supreme Court precedent." Id. at 691. Finally, "a state court's factual findings are presumed correct, unless rebutted by the petitioner with clear and convincing evidence." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citation omitted).

### 2. *Exhaustion of state court remedies and the procedural bar.*

Section 2254 further provides, with regard to exhaustion of state court remedies, that:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

6

> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).

It is well established "that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." Picard v. Connor, 404 U.S. 270, 275 (1971) (citations omitted). "A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). If "it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles [then] combine to mandate dismissal." Bailey, 172 F.3d at 1303 (citing Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998).

### 3. *Ineffective assistance of counsel.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a

7

criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant. Id. at 687.

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. at 690. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (citing Strickland, 466 U.S. at 689). In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing Holladay v. Haley, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)). "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. Chandler, 218 F.3d at 1316 (footnote omitted) (citing Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998)); see also Strickland, 466 U.S. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland

to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. Id. at 697. The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)). The burden of persuasion on the movant is preponderance of the evidence. Chandler, 218 F.3d at 1312–13.

## TRIAL FACTS[2]

The shooting death of Arkady Aminov ("Aminov") occurred in connection with a drug deal at the parking lot of a Miami Subs Grill.

Aminov arrived in a Mercedes Benz ("Mercedes") with Humberto Zapico ("Zapico") and David Montalvo ("Montalvo"), while his girlfriend, Sarah Sullivan ("Sullivan"), and his roommate, Jeremy Ellison ("Ellison") traveled in a separate vehicle. Petitioner was waiting at the location with Israel Lopez ("Lopez").

When Aminov arrived, Petitioner and Lopez walked out of the restaurant together. Montalvo and Aminov got out of the vehicle and Lopez introduced Petitioner as his cousin. They stood by the trunk of the Mercedes and Aminov asked if they had brought the money. Lopez indicated that Petitioner had the cash and Petitioner pulled out a bill from his pants pocket.

When Petitioner asked to see the marijuana, Zapico exited the car and "popped" the trunk open. Inside the trunk was a black plastic bag. Sullivan described the bag as a brown grocery bag, "like a Publix bag." After inspecting the bag's contents, Petitioner complained that it was not "Crippy" marijuana. Zapico shut the trunk. Aminov said angrily, "This is bullshit." "Y'all not here to buy anything. You're just wasting my time." Petitioner responded, "I got the money right here," gesturing towards his pocket, then reached under his t-shirt and retrieved a gun. Sullivan, who was watching from the other vehicle, said that thirty seconds after the trunk was opened, Petitioner produced a gun.

After Petitioner brandished the firearm, Aminov struck the Petitioner's hand then grabbed him and tried to take the gun away. Aminov threw Petitioner to the ground and started wrestling for control of the weapon, with Aminov on top. While Petitioner was laying on the asphalt, Aminov punched him in the face. Petitioner

---

[2] This factual recitation is taken from the Section 2254 Petition [D.E. 1 at 16-21].

tried to sit up and Aminov stood over him leaning forward at the waist. Aminov was about to punch him again when the gun went off.

Sullivan gave a different account of the shooting. She testified that Petitioner first fired three or four times in the direction of the Mercedes and then he turned and shot Aminov as Aminov stood up. After Aminov was shot, Sullivan maintained that Petitioner fired two or three more times at the Mercedes.

The pathologist explained that Aminov suffered a fatal gunshot wound to the right side of his chest and the bullet (the caliber of which was unknown) exited on the left side of his back, near the spinal column. The projectile traveled diagonally in a downward direction such that the exit wound was five inches lower than the entry wound. The absence of gunpowder residue on Aminov's shirt further indicated that the gun was fired from a distance. According to the pathologist, the medical evidence was consistent with Aminov having been shot by Zapico from a few feet away.

Sullivan, Montalvo and Zapico all agreed that Petitioner was sitting on the ground when he discharged his gun and that Aminov, who was either standing, or in the process of standing up, was higher than Petitioner when he was shot. Ellison, contrary to the known trajectory of the bullet and the pathologist's findings, testified that the gun was pointed straight into Aminov's chest and when it discharged it was in contact with the chest.

Lopez's account of the incident was materially different from Montalvo's version. When Lopez and Petitioner walked out of the restaurant, Lopez asked Aminov if they had the "regular weed" and Aminov said, "yeah." Once Aminov asked to see the money, they requested to see the marijuana and this verbal exchange went back and forth a few times. Aminov then told them to get inside the Mercedes, but they refused to comply. Lopez suggested that they should just hurry up and finalize the sale. Zapico exited the vehicle and opened the trunk. After Aminov tried to get them into the car, Lopez started to suspect that they were being set up for a robbery; he became even more concerned when he noticed that Zapico and Aminov, who were now standing by the trunk, were both "fidgeting." Zapico suddenly lifted up his shirt and pulled out a chrome-plated handgun. Lopez immediately fled and heard gunshots in the background. He jumped over a gate and kept on running until he nearly fainted from exhaustion.

Petitioner testified that he, Lopez, Montalvo, Aminov and Zapico were standing by the trunk when the hostilities erupted. Lopez and Aminov kept going back and forth verbally regarding the money and "the stuff." Zapico then "popped" the trunk, but Petitioner could not see what was inside because Zapico did not lift it up, he only unlocked it. Zapico then requested to see the money. When Petitioner told him that he had the money, Zapico instructed him to get in the Mercedes, but Lopez warned Petitioner not to. The moment Petitioner reached in his pocket and started pulling out the currency, Zapico produced a gun from under his shirt. As Petitioner turned to run, Aminov grabbed him and tripped him from behind, which caused

10

both of them to fall. Petitioner and Aminov began wrestling on the ground and Petitioner managed to pull his gun from his waistband. Aminov gripped the barrel of the gun and they started to fight for control of the weapon. Meanwhile, Zapico was standing nearby aiming at them. At some point, Petitioner's gun fired a single round, but the bullet did not hit anyone. Aminov and Petitioner continued to scuffle. As they fought, Zapico started firing in their direction. At some point, Petitioner and Aminov started to separate when Aminov was struck by a bullet from Zapico's gun. Aminov screamed and Petitioner took off running. While fleeing, Petitioner discarded the gun by throwing it in the back of a pickup truck.

Later, when the police processed the scene, they recovered one .40 caliber casing (consistent with Petitioner's handgun), five .9-millimeter casings (which corresponded to Zapico's .9-millimeter handgun) and one copper jacket (which Zapico said was from a round in his gun).

Zapico testified that it was Petitioner who first pulled out a gun and pointed it at them. When Aminov tried to disarm Petitioner and the two started fighting over the gun, Zapico reached into his glove compartment and grabbed a semi-automatic. Petitioner fired a shot while sitting on the ground and Aminov fell to the side clutching his abdomen. Petitioner then pointed at Zapico and fired a second shot. Zapico returned fire and discharged his weapon about seven times. He fled the scene in the Mercedes leaving Aminov behind. Right before he took off, Zapico alleged that Aminov, who was lying on the ground with a gunshot wound to his chest, put his hand to his ear and said, "Call me, buddy." As they sped away, Zapico handed the gun to his girlfriend who fired a parting shot out the passenger window.

## **GROUND ONE OF THE SECTION 2254 PETITION**

In Ground One, Petitioner challenges his trial counsel's effectiveness in the context of the Motions for New Trial. In this regard, Section 2254 relief is available to Petitioner only if the Rule 3.850 Order was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[;]" or "was based on an unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d). Dawkins' Section 2254 Petition attacks the post-conviction court's handling of Issue 1 of his Rule 3.850 Motion, where he argued that trial counsel was ineffective because he "failed to file a motion for new trial based on the verdict being contrary to the law and or weight of the evidence." See Rule 3.850 Motion [D.E. 11-2 at 132]. Specifically, Dawkins argues in his Section 2254 Petition that the post-conviction court's Rule 3.850 Order "represents an unreasonable application of

11

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and/or represents an unreasonable determination of the facts in light of the evidence." See Section 2254 Petition [D.E. 1 at 28].

With regard to Issue 1 of Petitioner's Rule 3.850 Motion, the post-conviction court noted that Petitioner's theory was "based on his interpretation of the jury's verdict which found him guilty of Second Degree Murder and Attempted Robbery with the 10/20/Life enhancement of discharging a firearm but not that he was guilty of the 10/20/Life enhancement of causing death or great bodily harm." See Rule 3.850 Order [D.E. 11-3 at 16]. The post-conviction court added that, on this basis, Petitioner argued that the jury verdict was "contrary to the law and evidence[;]" hence, "if his trial counsel would have argued this point more aggressively during the motion for new trial, the judge would have granted a new trial." Id. The post-conviction court found this argument flawed for the following reasons: "[a]s a general rule, inconsistent jury verdicts are permitted in Florida[;]" and "it assumes more extensive argument by his trial counsel would result in a more favorable ruling" but "[t]here is no basis in the record for [Petitioner's] argument and it is self-serving speculation at best." Id. at 16-17. Thus, the post-conviction court concluded that Petitioner had failed to establish that his counsel was deficient under the Strickland test and denied the Rule 3.850 Motion "without a hearing." Id. at 17.

The post-conviction court decided the question of whether the jury's verdict was inconsistent as matter of Florida law. Id. at 16 ("As a general rule, inconsistent jury verdicts are permitted in Florida."). Moreover, as a matter of federal law, "inconsistent verdicts are constitutionally tolerable." Dowling v. United States, 493 U.S. 342, 353-54 (1990) (citing Standefer v. United States, 447 U.S. 10, 25 (1980)). Therefore, the post-conviction court's state law determination is not subject to federal habeas review. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) ("A federal habeas corpus court may not interfere with a state court's

interpretation of state law absent a constitutional violation.") (citing Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. 1981)).

Given the permissibility of inconsistent verdicts under Florida law, the post-conviction court properly concluded that trial counsel's performance in seeking a new trial without arguing inconsistent verdicts more aggressively was not unreasonable. See Grayson, 257 F.3d at 1216 (Counsel's performance is not considered unreasonable unless "no competent counsel would have taken the action that . . . counsel did take.") (citation omitted). As to the prejudice prong, the post-conviction court concluded that Petitioner's assumption that "that more extensive argument by his trial counsel would result in a more favorable ruling" was "self-serving speculation at best." See Rule 3.850 Order [D.E. 11-3 at 17]. Therefore, the post-conviction court properly found that Petitioner had not satisfied the prejudice prong of the Strickland test. See Strickland, 466 U.S. at 694 (To establish prejudice, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different.).

Petitioner also contends that the Rule 3.850 Order "represents an unreasonable determination of the facts in light of the evidence." See Section 2254 Petition [D.E. 1 at 28]. However, "a determination of a factual issue made by a State court shall be presumed to be correct[;]" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not carried this burden.

Therefore, Petitioner is not entitled to habeas corpus relief as to Ground One of his Section 2254 Petition.

## GROUND TWO OF THE SECTION 2254 PETITION

In Ground Two, Petitioner challenges the effectiveness of his appellate counsel in the direct appeal of his conviction to the Third District Court of Appeal. Petitioner argues that his failure to exhaust his state court remedies as to Ground Two should be excused because his Rule 3.850

Motion was filed *pro se,* relying on Martinez v. Ryan, 566 U.S. 1 (2012).  However, Petitioner improperly relies on Martinez because there, the Supreme Court held that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance ***at trial*** if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 17 (emphasis added).  Because Ground Two, challenges the effectiveness of appellate, rather than trial, counsel, Martinez does not excuse Petitioner's failure to exhaust remedies or avoid the procedural bar.

Therefore, Petitioner is not entitled to habeas corpus relief as to Ground Two of his Section 2254 Petition.

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Dawkins' Section 2254 Petition be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), and the Court's Order [D.E. 126] the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 7th day of January, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Jose E. Martinez
      Counsel of Record